REDMANN, Judge.
“Your automobile contract is one of the largest investments you can make! That’s why it is so important to you and your family that this investment is fully protected . . . that you have complete security in the event of illness . . . accident ... or even death!”
A solicitation for credit group insurance began with those words, with “fully protected” and “complete security” emphasized Elsewhere in the solicitation, and in the group credit life insurance disability rider which resulted on acceptance, it is plain that the offered rider did not make any insured debtor’s car loan fully protected, nor give him complete security in the event of illness or accident.

Misrepresentation

Yet, in this appeal from a judgment awarding damages to insured’s succession for breach of the contract, one of the defenses is that the insured was guilty of a material misrepresentation. He signed a printed application card stating
“I DO . . . want to take advantage of my right to participate in the Accident and Health Plan.
“I understand that upon acceptance of this card by issuance of a certificate to *116 me, I will be entitled to full benefits effective with the postmark date of the envelope returning this card.
“At the present time I am under 65 years of age, in good health, do not contemplate an operation and am gainfully employed. * * * ” (Italics added.)
Defendant Capitol Life Insurance Company argues the applicant was not in good health, and had to know he was not.
The application was signed June 6, 1967. A March 1968 hospital record recites insured had “a 12 year history of essential vascular hypertension. The patient, in 1962, first went into clinical congestive heart failure and was digitalized at that time. He has since been on digitalis. * * *»
Also in evidence are records of other hospitalizations. In June of 1965 insured was hospitalized at the U. S. Public Health Hospital because of persistent hoarseness and blood pressure of 180/110 “verified by company physician who advised admission and further evaluation.” This hospitalization was plainly not because of any acute episode. In March of 1967 he was hospitalized because of a “blackout” preceded by a brief aura and lasting three days, and while in the hospital patient experienced a grand mal seizure. An electroencephalogram suggested an intracranial mass and neurosurgeons suspected a brain tumor. Recited diagnosis in respect to his seizure was convulsive disorder, etiology unknown. He was discharged but was to be readmitted on May 15 for pneumoenceph-alogram and further evaluation. On that readmission there was found parietal cortical atrophy without evidence of mass lesion, and his seizure disorder was thought probably secondary to generalized arteriosclerosis. He was discharged May 23, 1967 “not fit for duty.” All three records, one of 1965 and two of 1967, included a diagnosis of hypertensive cardiovascular disease or arteriosclerotic heart disease; and all described him as “not fit for duty.”
How much of his previous illness was explained to the insured is not shown, but the fair presumption is that he knew he had hypertension, and he probably knew he was taking digitalis for a heart condition.
Plainly his was not good health in an absolute sense at the time of his June 6, 1967 application for the disability rider.
Nevertheless he had just been sold group credit life insurance the previous month, May 1967, at the time he obtained a car loan from Associates Discount Corporation (now dismissed as a defendant). The disability coverage was offered as an addition to the life coverage, for which he knew he was eligible because he actually had it. Thus he knew his health was good enough for the life coverage designed to pay off his creditor as exclusive beneficiary. The solicitation urging him to add disability coverage nowhere suggests good health is a prerequisite to coverage. The application is quoted above, and under the circumstances we believe it not a material misrepresentation affecting validity of the policy that the applicant signed the printed form. He was at least in good health in the sense and to the extent that he was not over 65, did not contemplate an operation and was gainfully employed.
(While insured was discharged “not fit for duty” on May 23, it is not shown that this notation actually prevented his employment, nor, if it did, when it was changed. Defendant had introduced all of the USPHS hospital records into evidence, yet offered no other record or other evidence to show that the unfit classification prevailed or if so prevented employment at time of application. It is established that he was not only employed but actually working as of November 11, 1967, by which time he was in Beirut, Lebanon, in his job as ship’s cook. His widow’s testimony, although not clear due to her limited ability, suggests that he worked fairly regularly in spite of earlier hospitalizations up until his November 1967 illness. *117 Defendant made no attempt to show he was not gainfully employed as of June 6, 1967, nor did it contest the application’s recital of employment as a material misrepresentation.)

Coverage

The principal defense is that the policy terms exclude coverage of the disability in question. The pertinent exclusory language is:
“This rider does not cover and no benefits shall be payable on account of any total disability caused or contributed to by: * * *
“(2) Accident incurred or sickness contracted outside the continental limits of the United States, Hawaii, Alaska, Canada or Mexico, or
“(3) Disability resulting from accidental bodily injury incurred, or from sickness existing, prior to the effective date of insurance as to the insured Debtor.” (Emphasis added.)
The claim was first refused because the disabling heart failure occurred without the specified territories. We do not think it can be said, in the ordinary sense of the word meaning to “catch” a disease, that the heart failure was “contracted” in Lebanon. That exclusion is therefore not applicable.
Nor was the disability “caused or contributed to by” disability resulting from preexisting sickness. While defendant argues the insured had had hypertensive cardiovascular problems for 12 years, defendant misreads its own contract, which it prepared and which must be construed against it and favorably to the insured; C.C. arts. 1957 and 1958; Robbert v. Equitable Life Assur. Soc., 217 La. 325, 46 So.2d 286 (1950); Schonberg v. New York Life Ins. Co., 235 La. 461, 104 So.2d 171 (1958). Defendant has not shown that the occasional past sickness from insured’s underlying condition had resulted in a disability which caused or contributed to the disability in question. In fact insured was working, and therefore not disabled, at the time of his heart failure. His consequent total disability was not caused or contributed to by any other disability, and this exclusion is therefore likewise inapplicable.

Total Disability

Defendant finally argues total disability was not proven. The widow testified her husband was never able to return to work after his heart failure in Lebanon on November 11, 1967. He was there hospitalized until the end of the month. His March 13, 1968 hospitalization record recites a history since November 1967 of chest pain requiring nitroglycerine approximately once a week; “increased” dyspnea is also noted. Seven medicines were prescribed for daily taking. Discharged May 3, 1968, he was again hospitalized August 6 and died October 16. The widow’s testimony is corroborated by these circumstances and appears to us sufficient to establish the total disability.
The judgment appealed from, which awarded damages in the amount that the insurer should have paid to the creditor-beneficiary during the insured’s total disability, is therefore affirmed.
Affirmed.